secondwindconsultants.com
+1 800.594.7473

136 West St. Northampton, MA 01060

EXHIBIT

1

# BUSINESS CONSULTING AGREEMENT

This Business Consulting Agreement (***"Agreement"***) is made on this 17th day of March, 2023 by and between **Second Wind Consultants, Inc.** (***"SWC"***), a Massachusetts corporation; **JSmith Civil, LLC** (***"Client"***), a North Carolina limited liability company; and the individual signatories to this Agreement (SWC and Client individually a ***"Party"*** and collectively referred to as the ***"Parties"***).

**B A C K G R O U N D**

**WHEREAS** SWC provides business consulting services and is qualified to assist Client in the services described herein;

**WHEREAS** Client is in need of said business consulting services, and wishes to retain SWC to create and administer a customized business optimization program; and

**NOW, THEREFORE** In consideration of the mutual covenants and representations herein expressed, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

**T E R M S**

1. **Business Consulting Program Summary.** Client is engaging SWC to create and administer a customized business optimization program (***"Program"***) for Client, which will include without limitation one or both of the below services. Please note, Client cooperation in communication and providing documents to SWC is a requirement of the Program.

   ***a)*** ***Conduct General Financial Analysis.*** SWC will complete a review of Client's financial condition, which will include a review of periodic financial statements, tax returns, personal financials and all loan agreements, security agreements and merchant cash advance agreements included in the Program. SWC will then conduct an audit of financial operations to determine what steps should be taken for optimization. The information gathered will inform the strategic recommendations that will be organized into an SWC-guided and Client-implemented plan.

   **b)** ***Liability Resolution Services.*** By entering this Agreement, Client has unilaterally determined that it has insufficient revenue to support its debt service, and elects to employ SWC's Program which is designed to effectively and pragmatically resolve outstanding financial defaults and obligations. The Program is designed exclusively for business related debts and the personal guaranties associated therewith; it does not include personal or consumer debts. A Program schedule (***"Program Schedule"***) containing all debts included in the Program will be confirmed by Client prior to the Program's implementation.

2. **Program Fees.** In consideration of the services to be performed by SWC, SWC shall receive **Three Hundred Thousand Dollars** (**$300,000.00**), which will be paid to SWC as outlined on the fee schedule (***"Fee Schedule"***) identified on Exhibit A. The first Fee installment will be due upon execution of this Agreement. All remaining payments will be due ***on the day of the month the Agreement is signed.*** If the signing of the Agreement occurs after the 25th of the month, all future Fee payments will be due on the 25th of each month thereafter. Client will be required to execute the attached ACH processing form to facilitate payment of the Program Fee. Client hereby agrees to pledge

its business assets as collateral to secure SWC's Program Fees. The Program Fees vest as described below in Sections 9 and 10.

3. **Program Completion.** The Program, and thus this Agreement, will be formally concluded when the last of the following two directives is complete:

- The Program; or
- The fulfillment of Client's payment obligations to SWC pursuant to Section 2 above.

To confirm completion of the Program, SWC will issue an exit letter to Client. For confidentiality purposes, all documents obtained by or provided to SWC will be deleted or shredded thirty (30) days after the exit letter is sent. In the event Client wishes to keep said documents, written request must be provided within the thirty (30) day window.

4. **Mutual Nondisclosure Requirement.** Information will be disclosed to the Parties during the course of this Agreement involving confidential and proprietary information (***"Proprietary Information"***) as described below. The Parties understand and acknowledge that the Proprietary Information has been obtained through the investment of time, effort and expense, and that the Proprietary Information is a valuable, special and unique asset to the disclosing Party which provides said Party with a significant competitive advantage, and needs to be protected from improper disclosure. Proprietary Information includes without limitation information provided by a Party concerning its business, its fees, any third party with which SWC deals, business records and plans, trade secrets, contracts, strategies, systems, flow charts, written content, financial information, pricing structure, strategic alliances, and partners. As a material inducement to the Parties to enter into this Agreement, the Parties hereby agree that, unless specifically authorized in writing by the disclosing Party in advance, the receiving Party shall not, directly or indirectly: (i) use any confidential and Proprietary Information for any purpose other than to the extent necessary under this Agreement, or (ii) divulge, communicate or disclose any Proprietary Information to any third party for any purpose.

5. **Non-Circumvention Requirement.** Client acknowledges that SWC's strategies are unique, and that by entering into this Agreement, it has made the unilateral decision that no other entity can accomplish similar results. Therefore, as an inducement for SWC to enter into this Agreement and based upon the significant amount of work that must be completed immediately after execution, Client agrees that once this Agreement is executed, (i) Client, its agents or representatives, will not attempt to complete the work contained within the scope of this Agreement; or (ii) it will not hire an outside consultant, attorney, or third party to complete the work contained within the scope of this Agreement. In the event the work contained within the scope of this Agreement is completed by Client or third party as stated herein above, the SWC Fee contained herein becomes due and payable in full.

6. **Litigation by Creditors.** Client acknowledges that if it enters the Program, it has insufficient revenue to support its debt service, and has made the independent decision to default on its debt obligations. As a result of such default, Client acknowledges that Client's creditors may file a lawsuit against Client to which there are limited defenses. In the event lawsuits are filed against Client, SWC will not represent Client in any legal capacity. Instead, SWC will continue to work towards a resolution with the creditors, so long as Client remains enrolled in the Program. The end goal of every creditor correspondence is a "Settlement in Full" with Client's creditors, which would likely dismiss any current or pending litigation against Client.

7. **Covenant to Hold Harmless.** Client hereby waives any claims against SWC and shall hold SWC, its principals, employees and agents harmless for any adverse effects that arise from enrollment in the Program outside of willful, wanton, or gross negligence on the part of SWC. While SWC will use its best efforts to negotiate settlements with Client's business creditors, Client acknowledges that it independently and unilaterally defaulted on its financial obligations and is aware of all legal implications of said default including without limitation lawsuits, garnishments, levies, judgments, and adverse credit effects. Client acknowledges that SWC cannot control the activities of third-

party creditors, debt collectors, and/or credit reporting agencies, and acknowledges that this covenant is an inducement of SWC to enter into this Agreement.

8. **Program Results.** The results of the Program are dependent upon many factors that are outside the control of SWC. These include without limitation the financials of the Client and how they change throughout the Program, legal and statutory regulations, bank and creditor policies, and Small Business Administration regulations. SWC is experienced in working with and overcoming the hurdles that may arise throughout the course of a Program, but it cannot control outside factors, and therefore cannot guaranty specific results. In the event circumstances change during the timeline of the Program, whether the changes are within the business or from outside factors, the Program may be required to change accordingly. In the event Client elects to file a bankruptcy of any kind, Client will do so at his or her own expense.

9. **Termination by SWC.** SWC may terminate this Agreement if Client breaches any of the terms of the Agreement contained herein. Breaches include, but are not limited to the following:

   **a)** Client fails to make payments set forth in the Fee Schedule;

   **b)** Client misrepresents or fails to disclose any material facts relating to the Program; or fails to fully disclose all financial information requested by SWC; or

   **c)** Client in any way prevents SWC from doing its job, or client fails to adhere to SWC's strategies.

   Any and all monies paid to SWC will be treated as compensation for work completed and will not be refundable. In the event this Agreement is terminated after the Triggering Points, as defined below, the full fee described in this Agreement becomes due, payable, and enforceable.

10. **Termination by Client.** Except as provided in Section 5 herein, Client may terminate the services of SWC for any reason upon written notice sent to SWC until a settlement is agreed upon in principal or an asset sale in any form is completed (the ***"Triggering Points"***). Any monies paid to SWC will be treated as compensation for work completed until the point of severance and will not be refundable. If the Agreement is terminated prior to the Triggering Points, no further fees will be due. In the event this Agreement is terminated after the Triggering Points, the full fee described in this Agreement becomes due and enforceable.

11. **Security Interest.** To secure Program Fees, Client hereby grants SWC a security interest in all assets including without limitation all inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds). The security interest will be perfected by a UCC-1 filing.

12. **Miscellaneous.**

   **a)** **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without regard to conflict of law principles, and any dispute arising from this Agreement shall be adjudicated in the court of competent jurisdiction at the sole election of SWC within the Commonwealth of Massachusetts.

**b)** **Entire Agreement.** This Agreement contains the entire agreement and understanding between the Parties hereto and supersedes any prior or contemporaneous written or oral agreements, representations and warranties between them respecting the subject matter hereof.

**c)** **Further Assurances.** The Parties agree to take such reasonable steps and execute such other and further documents as may be necessary or appropriate to cause the terms and conditions contained herein to be carried into effect.

**d)** **Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns. Neither this Agreement nor the obligations of any party hereunder shall be assignable or transferable by such party without the prior written consent of the other party hereto.

**e)** **Severability.** If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

**13.** **Acknowledgment.** Client acknowledges that it has read this Business Consulting Agreement in full, and fully understands the terms and conditions herein.

**IN WITNESS WHEREOF, and acknowledging acceptance and agreement to the foregoing terms and conditions, Client affixes its signature hereto as of the aforementioned date.**

**Second Wind Consultants, Inc.**

By:________________________

Name:
Title:
Date:

**JSmith Civil, LLC**

DocuSigned by:

By:________________________
E02833387189432...
Name: Jeremy Smith
Individually and as
Title: President
Date: 3/17/2023

# Exhibit A

***Total Contract Value = $300,000.00***

| | |
|---|---|
| **On Contract Signing** | **$20,000** |
| **Month 2** | **$20,000** |
| **Month 3** | **$20,000** |
| **Month 4** | **$20,000** |
| **Month 5** | **$20,000** |
| **Month 6** | **$20,000** |
| **Month 7** | **$20,000** |
| **Month 8** | **$20,000** |
| **Month 9** | **$20,000** |
| **Month 10** | **$20,000** |
| **Month 11** | **$20,000** |
| **Month 12** | **$20,000** |
| **Month 13** | **$20,000** |
| **Month 14** | **$20,000** |
| **Month 15** | **$20,000** |

**From:** Jeremy Smith
**To:** Joseph Frost
**Subject:** FW: Conclusion of Services: JSmith Civil, LLC
**Date:** Thursday, August 31, 2023 10:55:44 AM
**Attachments:** Conclusion of Services- JSmith Civil, LLC.pdf

---

**From:** Liam Eagan <liam@secondwindconsultants.com>
**Sent:** Thursday, August 31, 2023 10:53 AM
**To:** Jeremy Smith <jsmith@jscivil.com>
**Cc:** Martin Mahoney <martin@secondwindconsultants.com>; Jared Nugent <jnugent@secondwindconsultants.com>; Rachel Dickinson <rachel@secondwindconsultants.com>; Dillon Millaway <dmillaway@secondwindconsultants.com>
**Subject:** Conclusion of Services: JSmith Civil, LLC

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dear Jeremy,

Despite our collective best efforts to reach a positive resolution in your case, this email and attached letter shall serve as formal notice that your Business Consulting Agreement with Second Wind Consultants has been canceled.

Should you find yourself in a position in which you are able to actively engage in our process, please feel free to reach out to our General Manager, Rachel Dickinson, copied here, to discuss what re-engagement might look like.

We wish you the best going forward.

Kind Regards,

**Liam Eagan | Staff Accountant**
: (413) 727-5420
: liam@secondwindconsultants.com
: 17 New South Street, Suite 304 | Northampton, MA 01060
Pronouns: he, him, his

EXHIBIT
2

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete/destroy the message. Thank you.

secondwind CONSULTANTS

secondwindconsultants.com
+1 800.594.7473

136 West St. Northampton, MA 01060

August 31, 2023

Jeremy Smith
JSmith Civil, LLC

**Re:** **<u>Conclusion of Services</u>**

Dear Jeremy,

Despite our collective best efforts to reach a positive resolution in your case, this letter shall serve as a formal notice of termination of your contract with Second Wind Consultants, Inc.

We hope to be able to help you and your business in the future, but we will establish a new relationship at that time.

We wish you luck moving forward.

Very truly yours,

Aaron Samuel Todrin
President

**Joseph Frost**

| | |
|---|---|
| **From:** | Joseph Frost |
| **Sent:** | Thursday, August 31, 2023 11:31 AM |
| **To:** | Seth Berti; Jared Nugent |
| **Cc:** | Jeremy Smith |
| **Subject:** | Re: Conclusion of Services: JSmith Civil, LLC |
| **Attachments:** | Conclusion of Services- JSmith Civil, LLC.pdf |

Jared:

As you are aware, JSmith Civil, LLC received the notice of termination of the contractual relationship with Second Wind Consultants ("Second Wind").

Based on our conversation, Second Wind is in possession of a substantial sum that was paid to it for future services that were going to be done over an 18-month period. Those services aren't going to be performed based upon the termination.

Please confirm the amount of the funds that will be returned to JSmith Civil by Second Wind. If no refund or funds will be returned by Second Wind please provide a basis for the retention of said funds.

Your prompt attention to this matter is greatly appreciated.

Thanks,

Joe Frost

Joseph Z. ("Joe") Frost

**BUCKMILLER, BOYETTE & FROST, PLLC**
4700 Six Forks Road
Suite 150
Raleigh, North Carolina 27609

INTERNET E-MAIL CONFIDENTIALITY DISCLAIMER:
Transmission of the information contained herein is not intended to create, and receipt does not constitute, an attorney-client relationship. While the use of E-Mail to transmit confidential information is discouraged, confidential information may be contained in this E-Mail message. If you are not the intended addressee, as indicated in this message, you may not copy or deliver this message to anyone other than the sender. In such case, you should destroy all copies of this message and notify the sender via reply E-Mail or by calling 919-296-5040.

EXHIBIT
3
exhibitsticker.com

On Aug 31, 2023, at 10:55 AM, Jeremy Smith <jsmith@jscivil.com> wrote:

---

**From:** Liam Eagan <liam@secondwindconsultants.com>
**Sent:** Thursday, August 31, 2023 10:53 AM
**To:** Jeremy Smith <jsmith@jscivil.com>
**Cc:** Martin Mahoney <martin@secondwindconsultants.com>; Jared Nugent <jnugent@secondwindconsultants.com>; Rachel Dickinson <rachel@secondwindconsultants.com>; Dillon Millaway <dmillaway@secondwindconsultants.com>
**Subject:** Conclusion of Services: JSmith Civil, LLC

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Dear Jeremy,

Despite our collective best efforts to reach a positive resolution in your case, this email and attached letter shall serve as formal notice that your Business Consulting Agreement with Second Wind Consultants has been canceled.

Should you find yourself in a position in which you are able to actively engage in our process, please feel free to reach out to our General Manager, Rachel Dickinson, copied here, to discuss what re-engagement might look like.

We wish you the best going forward.

Kind Regards,

**Liam Eagan | Staff Accountant**
(413) 727-5420
liam@secondwindconsultants.com
17 New South Street, Suite 304 | Northampton, MA 01060
Pronouns: he, him, his

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete/destroy the message. Thank you.

Matthew W. Buckmiller
Blake Y. Boyette†
Joseph Z. Frost

4700 Six Forks Road
Suite 150
Raleigh, North Carolina 27609

Telephone: (919) 296-5040
Telefax: (919) 977-7101
Website: www.bbflawfirm.com

Buckmiller Boyette & Frost
*Attorneys at Law*

†Licensed in North Carolina and Virginia

October 1, 2023

FILE COPY

**VIA CERTIFIED FIRST-CLASS UNITED STATES MAIL**

Second Wind Consultants, Inc.
Attn: Aaron Samuel Todrin
136 West Street, Suite 102
Northampton, Massachusetts 01060

**NOTICE OF CHAPTER 11 BANKRUPTCY FILING, APPLICATION OF AUTOMATIC STAY (11 U.S.C. § 362), AND DEMAND FOR TURNOVER OF PROPERTY OF THE ESTATE**

**In re JSmith Civil, LLC**
**BK Case No. 23-02734-5-JNC**
**United States Bankruptcy Court for the Eastern District of North Carolina**
**Petition Date: September 19, 2023**
**Turnover Demand Amount: $247,000.00**

Dear Mr. Todrin:

As you are aware, JSMITH CIVIL, LLC ("JSC" or "Debtor") filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") on September 19, 2023 (the "Petition Date"), BK Case No. 23-02734-5-JNC (the "Bankruptcy Case").[1]

Prior to the Petition Date, the Debtor and SECOND WIND CONSULTANTS, INC. ("SWC" or "Second Wind") entered into a Business Consulting Agreement dated March 17, 2023 (the "SWC Consulting Agreement"), whereunder and in exchange for payment of the sum of $300,000.00, payable in fifteen (15) monthly installments of $20,000.00, SWC was to provide financial and non-bankruptcy turnaround services with the goal of resolving the outstanding financial defaults and obligations of the Debtor.

---

[1] Enclosed is a copy of the Notice of Chapter 11 Bankruptcy Case that was generated by the Bankruptcy Court and evidencing the filing of the Bankruptcy Case by the Debtor.

EXHIBIT 4

The Debtor, as you are aware, paid SWC the sum of $287,000.00, through three (3) payments, the last of which was made on May 9, 2023, in the amount of $247,000.00 (the "May 2023 Payment"). The Debtor, as you are aware, was suffering from crippling financial distress and, in connection with the remittance of the May 2023 Payment, was told by SWC that it would be treated as an advance payment and, at the Debtor's request, could be returned at any time and for any reason. Moreover, and as illustrated by the timing and circumstances, the May 2023 Payment was completely contrary to the payment schedule that was set forth in the SWC Consulting Agreement.

SWC, to date, has refused to refund or return any portion of the May 2023 Payment that was remitted by the Debtor. These actions are contrary to the representation that were made to me, by an employee, partner, and officer of SWC, who indicated and represented that a refund of the May 2023 Payment would have to be calculated based upon the anticipated filing of the Bankruptcy Case by the Debtor (and discontinuance of the services of SWC under the SWC Consulting Agreement). On the contrary, and by correspondence dated August 31, 2023, the Debtor was informed that SWC was unilaterally terminating the SWC Consulting Agreement. IN connection with said termination, SWC did not provide or return any portion of the May 2023 Payment that was made by the Debtor, under the false premise, that it would be returned to the Debtor at a later date. Moreover, and particularly troubling to the Debtor, is the fact that SWC did not, and could not, have provided services to the Debtor under the SWC Consulting Agreement or otherwise, totaling $247,000.00, between May 9, 2023, and August 31, 2023.

The funds, represented by the May 2023 Payment, are "property of the estate" as that term is defined by § 541 of the Bankruptcy Code. The May 2023 Payment was scheduled by the Debtor on Schedule A/B in the Bankruptcy Case. SWC, likewise, should be advised and aware that its continued possession of, and refusal to turnover and remit the May 2023 Payment to the Debtor constitutes a violation of the automatic stay imposed by § 362(a)(3) of the Bankruptcy Code, which prohibits SWC from continuing to exercise possession and control over the May 2023 Payment, as property of the estate. Moreover, SWC cannot withhold or refuse to provide possession of the May 2023 Payment as a means by which to collect any prepetition indebtedness owed to it by the Debtor.

You should be advised that your continued violations of the provisions of the automatic stay and applicable North Carolina law, and all actions or omissions inconsistent with the provisions of the Bankruptcy Code, will be used as evidence to prove, *inter alia*, (1) that the violations of the automatic stay, set forth in § 362 of the Bankruptcy Code, are continuing in nature and is further aggravated by your respective failures to withdraw, dismiss or cease the above-referenced actions and debt collection efforts as requested herein, (2) that the failure to withdraw the demand for payment on a reasonable and timely basis as requested herein enhances any claim seeking the award of punitive damages for

willful violations of the automatic stay, and other federal and state statutes, including the provisions of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. (the "UDTPA"); and (3) that SWC has failed to take timely, necessary, appropriate and proper actions in the Bankruptcy Case so as to avoid the filing of motions for contempt and sanctions for violating the provisions of the automatic stay.

**DEMAND IS HEREBY MADE TO SWC FOR TURNOVER OF THE SUM OF $247,000.00, REPRESENTING THE MAY 2023 PAYMENT, WHICH IS PROPERTY OF THE ESTATE WITHIN TEN (10) DAYS OF THE DATE OF THIS CORRESPONDENCE.**

**IF, HOWEVER, THIS LETTER AND NOTIFICATION ARE IGNORED AND NO ACTION TAKEN CONSISTENT HEREWITH, APPROPRIATE ACTION WILL BE TAKEN AGAINST SWC AND ANY OTHER PARTY WHOSE ACTIONS CONSTITUTE WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND APPLICABLE NORTH CAROLINA LAW. ADDITIONALLY, THE DEBTOR WILL FILE AN ADVERSARY PROCEEDING AGAINST SWC SEEKING, *INTER ALIA*, TURNOVER OF THE MAY 2023 PAYMENT, AVOIDANCE AND RECOVERY OF THE MAY 2023 PAYMENT AS A CONSTRUCTIVELY FRAUDULENT TRANSFER UNDER § 548 OF THE BANKRUPTCY CODE, AND DAMAGES FOR SWC'S MISREPRESENTATIONS, CONVERSION, AND VIOLATIONS OF THE UDTPA.**

This matter demands your immediate attention. If you have any questions or concerns, please don't hesitate to let me know.

Sincerely,

Joseph Z. ("Joe") Frost, Esq.

Enclosures

cc: JSmith Civil, LLC

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor | JSmith Civil, LLC<br>Name | EIN: 81−1582026 | |
| United States Bankruptcy Court | Eastern District of North Carolina | Date case filed for chapter: 11 | 9/19/23 |
| Case number: | 23−02734−5−JNC | | |

Official Form 309F1 (For Corporations or Partnerships)

## Notice of Chapter 11 Bankruptcy Case

**10/20**

**For the debtor listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered. This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| **1. Debtor's full name** | JSmith Civil, LLC | |
| **2. All other names used in the last 8 years** | pdba BridgePoint Civil, LLC | |
| **3. Address** | PO Box 857<br>Goldsboro, NC 27530 | |
| **4. Debtor's attorney**<br>Name and address | Joseph Zachary Frost<br>Buckmiller, Boyette & Frost, PLLC<br>4700 Six Forks Road<br>Suite 150<br>Raleigh, NC 27609 | Contact phone 919−296−5040 |
| **5. Bankruptcy clerk's office**<br>Documents in this case may be filed at this address.<br>You may inspect all records filed in this case at this office or online at www.pacer.gov. | 300 Fayetteville Street, 4th Floor<br>P.O. Box 791<br>Raleigh, NC 27602 | Hours open:<br>8:30 a.m. − 4:30 p.m.<br><br>Contact phone 919−856−4752<br><br>Date: 9/19/23 |
| **6. Meeting of creditors**<br>The debtor's representative must attend the meeting to be questioned under oath.<br>Creditors may attend, but are not required to do so. | **October 26, 2023 at 10:00 AM**<br><br>Please bring a government issued picture ID with you to the meeting of creditors. This ID is required for entry into the building.<br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br><br>**Randy D. Doub United States Courthouse, Room 108, 150 Reade Circle, Greenville, NC 27858** |

**For more information, see page 2 >**

Debtor **JSmith Civil, LLC** Case number **23-02734-5-JNC**

| | |
|---|---|
| **7. Proof of claim deadline** | **Deadline for filing proof of claim:**<br>**For all creditors (except a governmental unit):** 1/24/24<br>A proof of claim is a signed statement describing a creditor's claim. A proof of claim may be filed online at www.nceb.uscourts.gov by accessing the Proof of Claim section. Alternatively, a proof of claim form may be obtained from the same website and submitted by mail. *When filing electronically, it is not necessary to complete a paper claim form.*<br>Your claim will be allowed in the amount scheduled unless:<br>• your claim is designated as *disputed*, *contingent*, or *unliquidated;*<br>• you file a proof of claim in a different amount; or<br>• you receive another notice.<br>If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled.<br>You may review the schedules at the bankruptcy clerk's office or online at www.pacer.gov.<br>Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. |
| **8. Exception to discharge deadline**<br>The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. | If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below.<br>**Deadline for filing the complaint:** 12/26/23 |
| **9. Creditors with a foreign address** | If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
| **10. Electronic noticing** | Parties may opt to receive notices from the court via email rather than U.S. Mail. Register at https://bankruptcynotices.uscourts.gov. |
| **11. Filing a Chapter 11 bankruptcy case** | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business. |
| **12. Discharge of debts** | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline. |